Caitlin Duffy
**SQUITIERI & FEARON, LLP**
2600 Kennedy Boulevard, Suite 1K
Jersey City, New Jersey 07306
Tel:     (201) 200-0900
Fax:     (201) 200-9008
Email: caitlin@sfclasslaw.com

-and-

Stephen J. Fearon, Jr.
Caitlin Duffy
Olga Anna Pettigrew
32 East 57th Street, 12th Floor
New York, New York 10022
Tel:     (212) 421-6492
Fax:     (212) 421-6553
Email: stephen@sfclasslaw.com
Email: caitlin@sfclasslaw.com
Email: olga@sfclasslaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER HUGHES and CARLA CRESSMAN, individually and on behalf of others similarly situated, | : : : : | |
| | : | Case No. _____ |
| Plaintiffs, | : : | |
| v. | : : | |
| TD BANK, N.A., | : : | |
| Defendant. | : : : | |

---

## PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiffs CHRISTOPHER HUGHES and CARLA CRESSMAN ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## I.    INTRODUCTION

1.    Defendant TD Bank, N.A. ("TD Bank" or "Defendant"), maintains executive offices at 1701 Route 70 East, Cherry Hill, New Jersey 08034.   Plaintiff Hughes resides at 2630 Atlantic Avenue in Atlantic City, New Jersey and Plaintiff Cressman resides at 734 Oak Park Road in Hatfield, Pennsylvania.

2.    This is a civil action seeks monetary damages, restitution, and declaratory relief from Defendant arising from its unfair and unconscionable assessment and collection of excessive overdraft fees in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq.*, and the Electronic Fund Transfer Act, 15 U.S.C. §§1693, *et seq.*, ("EFTA") and its related regulations, 12 C.F.R. §§205, *et seq.*, as well as common law.

3.    TD Bank improperly charges overdraft fees or insufficient fund fees to customer accounts when a customer has not overdrawn his checking account and when TD Bank has not had to pay out more funds than were in the customer's checking account, and improperly reorders electronic debit transactions from the highest to lowest dollar amount to deplete the customer's available funds as quickly as possible while maximizing the number of overdraft fees collected by TD Bank.

4.    Countless United States banks – including TD Bank – have taken advantage of the popularity of electronic banking and the ubiquitous use of debit card transactions to turn the assessment of overdraft fees into a major profit center.   A debit card allows customers to access their checking account funds by using the card to execute a transaction.   When a debit card is

used, the charge is processed electronically, banks such as TD Bank have the option to accept or decline the transaction at the point of sale.  Historically, banks covered customers who occasionally overdrew their accounts by check or debit card, without charging their customers. Since the early 1990s, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  An FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States, and found that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.

5.      In 2007 banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008 as more and more consumers struggled to maintain positive checking account balances.  In 2009 banks brought in $37.1 billion in overdraft charges alone.  With over 1,850 automatic teller machines ("ATMs") and over 1,275 retail banking locations across the eastern United States, TD Bank is among the larger beneficiaries of these staggering charges.

6.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base. Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

7.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved

in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear. For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

8. The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions. Retail and service transactions could still be executed if consumers presented an alternative form of payment. ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless. In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

9. Instead of simply declining debit transactions when customers have insufficient funds in their account, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, TD Bank routinely processes such transactions and then charges its customers an overdraft fee of $35 – even when the transaction is for only a few dollars. This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for TD Bank.

10. Additionally, as part of its inequitable motive to generate profits by imposing unconscionable overdraft fees, TD Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection. Even after the effective date of regulations requiring customers to opt into any overdraft program, Defendant continues to permit customers' accounts to drop into a negative balance, thereby incurring overdraft fees.

11.     In many instances, these overdraft fees cost TD Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars. Even more egregious, customer accounts may not actually be overdrawn when TD Bank charges the overdraft fees, or at the time of the debit transaction.

12.     Thus, it is through manipulation and alteration of customers' transaction records that TD Bank maximizes overdraft penalties imposed on customers.

13.     On behalf of themselves and all others similarly situated, Plaintiffs bring this action against Defendant based on Defendant's deceptive practice of assessing overdraft charges in violation of the New Jersey common law and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq.*  Plaintiffs seek injunctive relief under § 56:8-159, restitution of all overdraft fees paid to TD Bank by Plaintiffs under § 56:8-2.12, disgorgement of the ill-gotten gains derived by TD Bank from its misconduct under the statute and common law, as well as punitive and exemplary damages, including treble damages, pre-judgment interest, costs of the action, and attorney fees as prescribed by § 56:8-19 and as granted under common law.

14.     Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action against Defendant for violation of the EFTA because after August 15, 2010, the effective date of the statute, Defendant continued to impose overdraft fees on Plaintiffs and the Class (defined below) without first obtaining affirmative consent, or opt-in, as required by 12 C.F.R. §205.17.  Plaintiffs seek, on behalf of themselves and all others similarly situated, actual damages sustained, statutory damages in such amount as the Court may allow but not more than the lesser of $500,000.00 or 1 per centum of the net worth of the Defendant, costs of the action, and attorney fees, all of which are expressly made available by statute, 15 U.S.C. §1693m.

## II.    PARTIES

15.    Plaintiff Christopher Hughes is a natural person who resides in Atlantic City, New Jersey and opened a checking account with TD Bank in January 2010.  Prior to and after August 15, 2010 Plaintiffs Hughes was charged multiple overdraft fees for the payment of ATM or one-time debit card transactions.

16.    Plaintiff Carla Cressman is a natural person who resides in Hatfield, Pennsylvania and opened a checking account with Commerce Bank in or around October 2004, and maintained their account through TD Bank when TD Bank acquired Commerce Bank in 2008. Prior to and after August 15, 2010 Plaintiffs Cressman was charged multiple overdraft fees for the payment of ATM or one-time debit card transactions.

17.    Defendant TD Bank is a Delaware corporation and maintains its executive offices in Portland, Maine and Cherry Hill, New Jersey.  TD Bank is a wholly owned subsidiary of Toronto-Dominion Bank, which is headquartered in Toronto, Canada.  Toronto-Dominion Bank and its subsidiaries are collectively known as the TD Bank Group.

18.    TD Bank is the U.S. Personal and Commercial Banking division of the TD Bank Group and accounts for approximately 21% of TD Bank Group's total annual adjusted earnings. TD Bank is one of the 10 largest banks in the United States, with more than 7.4 million customers and approximately $151 billion in total deposits as of July 2011.

19.    TD Bank regularly and systematically conducts business throughout the eastern United States.  TD Bank is a national commercial bank subject to the National Bank Act, 12 U.S.C. §§ 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

20.     TD Bank, N.A. is comprised of TD Banknorth, a conglomerate of New England regional banks, which was acquired by TD Bank Group in 2007, and Commerce Bank, founded in New Jersey and acquired by TD Bank Group in 2008.

21.     TD Banknorth became a wholly-owned subsidiary of TD Bank Group on April 27, 2007.

22.     TD Bank Group acquired all assets and liabilities of Commerce Bank on March 31, 2008 for $8.5 billion. According to a press release issued by TD Bank, the acquisition doubled TD Bank's presence in the United States. Commerce added 460 branches and $48 billion of assets to the 600 branches and $40 billion of total assets that TD Bank and its Canadian parent company had in the United States.

23.     On May 31, 2008, TD Banknorth and Commerce Bank merged to become TD Bank N.A. (known as TD Bank, America's Most Convenient Bank).

24.     Since the acquisition, TD Bank has owned and operated Commerce Bank's and TD Banknorth's consumer banking operations, and has finished converting those operations to the TD Bank brand.  Pursuant to its acquisition agreements, TD Bank assumed all liabilities for Commerce Bank and TD Banknorth.  Therefore, TD Bank is liable for any improper banking practices committed by Commerce Bank or TD Banknorth, and is obligated by law to compensate Plaintiffs and Class members who were injured by Commerce Bank's  or TD Banknorth's overdraft fee practices before TD Bank acquired TD Banknorth in 2007 and Commerce Bank in 2008.

25.     TD Bank is engaged in the business of providing retail banking services to tens of thousands of consumers, including Plaintiffs and members of the Class, including issuing debit cards for use by its customers in conjunction with their checking accounts.

26.    TD Bank operates more than 1,000 branches and ATMs in Connecticut, Delaware, Florida, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia and the District of Columbia.

## III.    JURISDICTION AND VENUE

27.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1337 because this action arises under the Electronic Fund Transfers Act, 15 U.S.C. §§1693, *et seq*.

28.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005,  28 U.S.C. §§ 1332(d)(2) and (6), because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one Plaintiff is a resident of a different state than TD Bank. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims arising under the common and statutory laws of New Jersey because Plaintiffs' state law claims are based upon the same case or controversy as Plaintiffs' claims arising under federal law.

29.    Defendant maintains executive offices in Cherry Hill, New Jersey and conducts substantial business in this judicial District.  Venue in this District is therefore proper under 28 U.S.C. §1391 in that this is a judicial District where Defendant resides and is the judicial District in which a substantial part of the acts and omissions giving rise to the claims occurred.

## IV.    THE ELECTRONIC FUNDS TRANSFER ACT

30.     To address the rampant abuse of overdraft charges, the Board of Governors of the Federal Reserve System (the "Board") implemented 12 C.F.R. § 205.17 to amend the EFTA to include notice requirements for banks concerning overdraft charges.  The EFTA provides a basic

framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer ("EFT") systems.

31.     Under the EFTA, a financial institution may not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to a financial institution's overdraft service unless the financial institution (i) provides the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft services, (ii) provides a reasonable opportunity for the consumer to affirmatively consent, or opt-in, to the service for ATM and one-time debit card transactions, (iii) does in fact obtain the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transaction, and (iv) provides the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically, which includes a statement informing the consumer of the right to revoke such consent.  12 C.F.R. §205.17(b)(1).

32.     This requirement implicates different effective dates depending upon when the consumer opened his or their account.  For consumer accounts opened prior to July 1, 2010, the financial institution must not assess any fees or charges on a consumer's account on or after August 15, 2010 for paying an ATM or one-time debit card transaction pursuant to the overdraft service unless the institution has complied with §205.17(b)(1) and obtained the consumer's affirmative consent.  12 C.F.R. §205.17(c)(1).  For accounts opened on or after July 1, 2010, the financial institution must comply with §205.17(b)(1) and obtain the consumer's affirmative consent before the institution assesses any fee or charge on the consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service.  12 C.F.R. §205.17(c)(2).

33.     Under the EFTA, an "electronic funds transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit account. Such term includes . . . point-of-sale transfers."  15 U.S.C. §1693a(6); *see also* 12 C.F.R. §205.3(b).

34.     Defendant is a financial institution that provides an "overdraft service" as that term is defined by 12 C.F.R. §205.17(a) which states:  "the term 'overdraft service' means a service under which a financial institution assesses a fee or charge on a consumer's account held by the institution for paying a transaction (including a check or other item) when the consumer has insufficient or unavailable funds in the account."

35.     Financial institutions that impose a fee for overdraft services are required to obtain affirmative consent, or opt-in.  Specifically, 12 C.F.R. §205.17(b) states:

(1)     General. . . . a financial institution holding a consumer's account shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution:

(i)  Provides the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service;

(ii)  Provides a reasonable opportunity for the consumer to affirmatively consent, or opt in, to the service for ATM and one-time debit card transactions;

(iii)  Obtains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions; and

(iv)  Provides the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically, which includes a statement informing the consumer of the right to revoke such consent.

36.     Pursuant to the Board's authority under 15 U.S.C. §§1693b(b) and 1693c and its implementing regulation 12 C.F.R. §205.17(c), there are effective dates when a financial

institution may not assess any fees or charges on a consumer's account unless the consumer opts-in to the institution's overdraft services.  Specifically, 12 C.F.R. §205.17(c) states:

> (1)   Existing account holders. For accounts opened prior to July 1, 2010, the financial institution must not assess any fees or charges on a consumer's account on or after August 15, 2010 for paying an ATM or one-time debit card transaction pursuant to the overdraft service, unless the institution has complied with §205.17(b)(1) and obtained the consumer's affirmative consent.

> (2)   New account holders. For accounts opened on or after July 1, 2010, the financial institution must comply with §205.17(b)(1) and obtain the consumer's affirmative consent before the institution assesses any fee or charge on the consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service.

## V.    FACTUAL ALLEGATIONS

### A.    TD Bank

37.    TD Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by TD Bank for customers who open a checking account is a debit card, also known as a check card or ATM card. Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at ATMs. Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically.  As a result, TD Bank is notified instantaneously when the card is swiped and has the option to accept or decline transactions at such time.

38.    TD Bank employs sophisticated software to automate its overdraft system.  This software maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

39.    As a result of TD Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are

likely to be charged for multiple smaller transactions. Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur. For example, if a customer, whose account has a $50 balance at the time TD Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer. Conversely, if the $100 transaction were debited last – consistent with the actual order of transactions – only one overdraft fee would be assessed. *See* FDIC Study of Bank Overdraft Programs, November 2008, available at: http://www.fdic.gov/bank/analytical/overdraft/ at 11 n.12.

### B.      TD Bank's Relevant Customer Documents Concerning Overdrafts

40.     Plaintiffs and all members of the Class maintain or maintained a checking account with TD Bank.

41.     The terms of TD Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by TD Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.

42.     When the Bank issued Plaintiffs a debit card or ATM card, it also provided them with a Personal Deposit Account Agreement ("Account Agreement"). The current Account Agreement, dated September 2011 and available on TD Bank's website,[1] provides:

> **Overdrafts**
> An overdraft is an advance of funds greater than the amount that has become available in accordance with the Bank's Funds Availability Policy, made by us to you, at our sole discretion. Overdrafts include advances to cover a check, in-person withdrawal, ATM withdrawal, or a withdrawal by other electronic means

---

[1] A copy of the Account Agreement is available at
https://esecure.tdbank.com/net/accountopening/PersonalAcctAgree.pdf

from your Account. We may demand immediate repayment of any overdraft and charge you an overdraft fee (see Fee Schedule).

You may overdraw your account by up to $5 per day without being charged a fee. If your negative available balance exceeds $5 at the end of the day, we will charge you for each transaction that overdraws your account (see "Important Information for Consumers about your TD Bank Checking Account" brochure)

You agree to pay us, when we ask you, all of our costs of collecting an overdraft, to the fullest extent permitted by applicable law. These costs include, but are not limited to, our legal fees and expenses. If more than one of you owns an Account, each of you will be responsible for paying the entire amount of all overdrafts and obligations resulting from the overdraft.

We do not have to allow you to make an overdraft. Intentionally withdrawing funds from an Account when there are not enough finds in the Account to cover the withdrawal or when the funds are not yet available for withdrawal may be a crime.

Account Agreement, at 14.

43.     The Account Agreement also states:

We do not process transactions in the order in which they occur. The order in which items are processed may affect the total amount of overdraft fees incurred. Overdraft fees may be assessed on items presented for payment that bring your Account into a negative balance, as well as any subsequent transactions presented for payment while the Account has a negative balance.  See "Overdrafts" and "Sustained Fee for Overdrawn Accounts" below, as well as the Fee Schedule for more information.  Overdraft fees are not charged on "pending" authorizations, although they reduce your available balance.

We may from time to time change the order in which we accept, pay or charge items to your Account even if (a) paying a particular item results in an insufficient balance in your Account to pay one or more other items that otherwise could have been paid out of your Account; or (b) using a particular order results in the payment of fewer items or the imposition of additional fees. If we do change our processing order for checks and other items presented for payment from your Account, we will provide advance notice of the change.

Account Agreement, at 12-13

44.     The Account Agreement states that the Bank "may charge you a fee, as disclosed in the Fee Schedule, for any Checking Account that remains in overdrawn status for ten (10) consecutive Business Days."   Account Agreement at 14.

45.     Upon information and belief, earlier iterations of the Account Agreement contained similar language to that quoted in paragraphs 42 to 44, above.

46.     In addition, upon information and belief, earlier Account Agreements provided that TD Bank "may accept, pay or charge the appropriate Account checks and other items in any order we choose" and that TD Bank had sole discretion to decide whether to deny a transaction due to insufficient funds:

> "Methods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date.  We may in our sole discretion change our priorities, categories, or orders at any time without notice to you.  Even if we provisionally post checks and other items to your Account during any  Business Day, we may treat them as if we received all of them at the end of the Business Day and process them in any order we choose."

47.     Upon information and belief, earlier Account Agreements also provided that:

> We may establish different processing orders for checks and other items. We may establish categories for checks and other items. We may establish a processing priority for each category… Methods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date. We may in our sole discretion change our priorities, categories, or orders at any time without notice to you. Even if we provisionally post checks and other items to your Account during any Business Day, we may treat them as if we received all of them at the end of that Business Day and process them in any order we choose. We do not process transactions in the order in which they occurred.

48.     Upon information and belief, earlier Account Agreements also provided that:

> When you do not have enough funds in your Account to cover all of the checks and other items presented that Business Day, some processing orders may result on more insufficient funds items and more fees than others. We may choose our processing orders in our sole discretion and without notice to you, regardless of whether additional fees may result.

49.    The Account Agreement itself does not set forth the dollar amount of fees that will be charged for purported overdrafts. Instead, a separate document, the "Personal Fee Schedule" ("Fee Schedule"), lists the dollar amount of fees that will be charged for purported overdrafts. The Fee Schedule provides:

| | |
|---|---|
| Overdraft – Return (NSF)/Overdraft – Paid (per item)[3] | $ 35.00 |
| Sustained Overdrafts[4] | $ 20.00 |

[3] The fee applies to a maximum of five (5) items per day per account.
[4] The Sustained Overdraft Fee will be applied on the 10th consecutive business day of overdraft status.

50.    Both the Account Agreement and the Fee Schedule fail to indicate that TD Bank will always reorder debits highest to lowest and also fails to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

51.    TD Bank's representations on its website and in the Account Agreement are deceptive and unfair because it is, in fact, the Bank's practice to *always* reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Account Agreement and its customers' reasonable expectations.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Bank's Account Agreement as well as state consumer protection laws.

**C.    TD Bank's Re-Ordering of Checking Account Transactions**

52.    To maximize its overdraft revenue, TD Bank manipulates and reorders debits from highest to lowest during given periods of time. TD Bank reorders transactions to increase

the number of exorbitant overdraft fees it can charge. This practice violates consumer protection laws, the covenant of good faith and fair dealing in the Bank's Account Agreement, and common law.

53.     In addition, TD Bank misrepresents its reordering practices, as the Bank does not state unequivocally in its contract that it will reorder debits from highest to lowest.  The statements in the Account Agreement are deceptive and unconscionable. While TD Bank encourages its customers to use debit cards—informing consumers that the cards are a "convenient way to access your money," "are accepted at millions of locations worldwide," "are safer than using cash,"—TD Bank fails to disclose its wrongful practices relating to its imposition of overdraft fees from debit card purchases. TD Bank states that it has the sole discretion to reorder transactions that occur on the same business day. However, TD Bank fails to disclose that it maximizes its overdraft fees, at consumer expense, by grouping together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reordering them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Deposit Agreement and its customers' reasonable expectations. Despite these predatory practices, TD Bank markets itself as "America's Most Convenient Bank." TD Bank's practices violate the covenant of good faith and fair dealing implied in the Deposit Agreement as well as the consumer protection laws of numerous States.

54.     TD Bank touts the purported benefits of its debit cards in advertisements aimed at luring new customers and retaining current ones. TD Bank advertises the purported benefits of its checking accounts and debit cards on its website:

      a.  "The TD Bank Visa Debit Card makes banking more convenient – anytime, anywhere to:

16

- Make purchases
- Pay bills or make recurring payments
- Shop online
- Free ATM access at over 5,200 TD Bank and TD Canada Trust ATMs
- Withdraw cash, check balances or transfer funds between accounts instantly."

b. "You can use your Visa Debit Card anywhere Visa debit cards are accepted, including ATM locations worldwide. It's easier and faster than writing a check."

c. "With our free Online Banking, you can access your account online anytime, anywhere
- Get real-time account information
- View check images online
- Transfer funds between accounts
- Stop payments on checks
- Review, save and print online statements – Exactly like paper statements but with more security and less clutter
- Receive e-mail alerts to better manage finances
- Pay bills with FREE Bill Pay
- Access deposit accounts directly with Quicken$^®$ and Microsoft$^®$ Money."

55. Upon information and belief, earlier iterations of advertisements for TD Bank's Visa Debit Card and Online Banking services contained substantially similar language.

56. Each of these advertisements is misleading and deceptive because each creates the expectation that account funds are debited immediately at the time of a purchase, in the amount of that purchase only. Furthermore, each advertisement is likely to lead customers to believe that transactions will be processed in the order in which they are incurred, as opposed to being reordered and processed ahead of, or behind, transactions from different days. As described herein, TD Bank fails to meet these expectations: funds are not depleted immediately at the time of purchase in the amount of that purchase only, and TD Bank reorders transactions from different days for its own benefit, to the consumer's detriment.

57. Transactions involving debit cards used by TD Bank customers, including the withdrawal of cash from ATMs and POS transactions with vendors, are processed electronically.

As a result, TD Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

58.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under TD Bank's posting system, it fails to post charges in the order in which they are assessed or received.  TD Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order in order to maximize the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

59.     Indeed, instead of processing such transactions in chronological order, TD Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees

60.     TD Bank refrains from immediately posting charges to a customer's account as it receives them – sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, TD Bank is able to amass a number of charges on the account.  Subsequently, TD Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, TD Bank posts them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

61.     TD Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the

generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

62.    TD Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees. TD Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide TD Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

63.    In addition, TD Bank's customer account statements are deceptive, unfair and misleading because while pending transactions are not reflected in the daily balances, TD Bank internally reduces customers' daily balance, giving customers a false impression of the actual funds that are available in customers' accounts.  Further, these pending transactions unknowingly reduce a customer's daily balance on a given day even if the pending transaction is not posted on that day and instead is posted on a subsequent day, which is contrary to customers' reasonable expectations.  This practice provides TD Bank with substantially higher overdraft fee revenues than it would otherwise achieve absent this practice.

64.    Before it was acquired by TD Bank, Commerce Bank and TD Banknorth engaged in substantially similar practices concerning the reordering of checking account transactions and the imposition of overdraft fees on consumers.

65.    As a result, Plaintiffs and members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.     TD Bank's Obstruction of Accurate Balance Information**

66.     TD Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

67.     TD Bank provides inaccurate balance information to its customers through its electronic network. TD Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

68.     Even when TD Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving – rather than prudently declining – subsequent debit card purchases and other electronic transactions.

69.     TD Bank also assesses overdraft fees when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment. It does this by placing a "hold" on actual funds in the customer's account. In doing so, TD Bank charges overdraft fees where it faces no risk because the cash balance in the customer's account has not dropped below zero.

**E.     TD Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

70.     When its debit cards are used in POS transactions or at ATMs, TD Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.   The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft

tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  TD Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

71.     Notwithstanding its technological capabilities and actual knowledge, TD Bank fails to provide notice to Plaintiffs and the Class that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because TD Bank does not notify its customers of the potential overdraft, and does not give them the option to decline the debit card transaction or provide another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

**F.     TD Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

72.     By engaging in the conduct described herein, TD Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies"). These "best practice" recommendations include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option." 70 F.R. 9127-01, 9132.

73.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM

withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

74.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R.D. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." *Id*.

75.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.

76.     TD Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account. In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

77.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion: Bank Fees for Overdrafts Increase 35% in Two Years."  The report found that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report found that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee." The report also found that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

### G.     TD Bank's Unconscionable Provisions and Policies

78.     TD Bank's overdraft policies and practices are unconscionable in the following respects, among others:

a.   TD Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.   TD Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.   TD Bank does not alert or provide notice to its customers at the time of a transaction that it will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.   The Account Agreement and related documents are contracts of adhesion in that they are standardized forms which are not signed by the depositor, imposed and drafted by TD Bank, a party of vastly superior bargaining strength, leaving the

customer with no choice but to adhere to these terms if he wants to open a checking account with the Bank;

e.  The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Account Agreement, but rather in a different and separate document, which is also not signed by the depositor; and

f.  The Account Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though TD Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

g.  Even after the August 15, 2010 effective date of 12 C.F.R. § 205.17, the Bank continues to assess overdraft charges against customers' accounts who have not opted into its overdraft service.

**H.    TD Bank's Overdraft Practices Harmed Plaintiffs and the Class**

**1.    Fees Assessed Before the EFTA Opt-in Requirement**

79.    TD Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Class.  The following allegations regarding the named Plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Class as a result of TD Bank's wrongful overdraft policies and practices.

80.    Plaintiff Cressman opened a checking account at Commerce Bank in or around October 2004.  TD Bank issued a debit card to Ms. Cressman in connection with her account.

81.     Plaintiff Hughes opened a checking account at TD Bank in or around January 2010.  TD Bank issued a debit card to Mr. Hughes in connection with his account.

82.     At no time prior to August 15, 2010 nor at any time since August 2010 has Defendant obtained Plaintiffs' affirmative consent, or agreement to opt-in, to the Defendant's overdraft service for payment of ATM or onetime debit card transactions in accordance with 15 U.S.C. §§1693b(b) and 1693c, and its implementing regulation, 12 C.F.R. §205.17.

83.     When Ms. Cressman and Mr. Hughes used their debit cards to access their respective accounts, the charges were processed electronically, and TD Bank had the option to accept or decline the transactions at the point of sale.

84.     Plaintiffs used their ATM/debit card issued by Defendant on several occasions in order to conduct electronic funds transfers.

85.     TD Bank wrongfully charged Plaintiffs overdraft fees on multiple occasions.

86.     By way of illustration, Ms. Cressman was charged two overdraft fees on May 13, 2011, in the amount of $35.00 each, for a total of $70.00.  Below is the ordering of transactions as reflected in Ms. Cressman's statement:

**Balance Sheet per TD Bank's Reordering Scheme**
**(Debits Processed from Highest to Lowest and Not Showing a Negative Balance)**

|  |  | Deposits | Debits | Fees | Balance |
|---|---|---|---|---|---|
|  | Beginning Balance on 05/13/11 |  |  |  | **$17.17** |
| Date Posted | Item Description |  |  |  |  |
| 05/13/2011 | ACH Payment – Direct Deposit | $685.83 |  |  | 653.00 |
| 05/13/2011 | eTransfer Credit – Online Xfer from Checking | 100.00 |  |  | 753.00 |
| 05/13/2011 | OVERDRAFT PD |  |  | 70.00 | 683.00 |
| 05/13/2011 | eTransfer Debit – Online Xfer to Checking |  | 300.00 |  | 383.00 |
| 05/13/2011 | DDA Withdraw (ATM) |  | 140.00 |  | 243.00 |
| 05/13/2011 | DDA Withdraw (ATM) |  | 20.00 |  | 223.00 |
| 05/13/2011 | VISA DDA Purchase |  | 17.86 |  | 205.14 |
| 05/13/2011 | VISA DDA Purchase |  | 17.26 |  | 187.88 |
| 05/13/2011 | DDA Non Cash DSP |  | 7.92 |  | 179.96 |

| 05/13/2011 | VISA DDA Purchase | | 4.23 | | **175.73** |
|---|---|---|---|---|---|
| | | | **Total Fees** | **70.00** | |

87.     Although Ms. Cressman maintained a positive account balance, Defendant charged her $70 in overdraft fees, reflecting two separate overdrafts.

88.     Upon information and belief, TD Bank deducted pending transactions on subsequent days without reflecting those transactions on Ms. Cressman's statement, thereby reducing her available balance so that Ms. Cressman did not have a sufficient balance to cover the transactions executed on that day.

89.     Had TD Bank not deducted pending transactions that were posted after May 13, 2011 from Ms. Cressman's available balance on May 13, 2011, Ms. Cressman would not have incurred *any* overdraft fees.

90.     The below chart reflects Ms. Cressman's available balance using the maximum amount of available deductions that could have occurred using Defendant's practice of deducting pending transactions that are posted on subsequent days from a customer's available balance on days prior:

**Balance Sheet Using TD Bank's Reordering Scheme**
**(Debits Processed from Highest to Lowest and Showing a Negative Balance)**

| | | Deposits | Debits | Fees | Balance |
|---|---|---|---|---|---|
| | **Beginning Balance on 08/25/11** | | | | **$44.46** |
| **Date Posted** | **Item Description** | | | | |
| 08/25/2011 | Electronic Pmt – Web | | 65.15 | | -20.69 |
| 08/25/2011 | VISA DDA Purchase | | 10.00 | | -30.69 |
| 08/26/2011 | ACH Deposit – Direct Deposit | 678.05 | | | 647.36 |
| 08/26/2011 | OVERDRAFT PD | | | 70.00 | 577.36 |
| | | | **Total Fees** | **70.00** | |

91.     If TD Bank had not manipulated and reordered Ms. Cressman's transactions from highest to lowest, she would not have been assessed two overdraft fees.

92.     For instance, if TD Bank had posted the transactions from lowest to highest, Ms. Cressman would have been assessed only one overdraft fee instead of two:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | Deposits | Debits | Fees | Balance |
|---|---|---|---|---|---|
|  | **Beginning Balance on 08/25/11** |  |  |  | **$44.46** |
| **Date Posted** | **Item Description** |  |  |  |  |
| 08/25/2011 | VISA DDA Purchase |  | 10.00 |  | 34.46 |
| 08/25/2011 | Electronic Pmt – Web |  | 65.15 |  | -30.69 |
| 08/26/2011 | ACH Deposit – Direct Deposit | 678.05 |  |  | 647.36 |
| 08/26/2011 | OVERDRAFT PD |  |  | **35.00** | 612.16 |
|  |  |  | **Total Fees** | **35.00** |  |
|  |  |  |  |  |  |

93.     TD Bank failed to notify Ms. Cressman that she could be assessed overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, TD Bank never notified Ms. Cressman at the time she executed the purported insufficient funds transactions described above, that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions. Furthermore, TD Bank paid, rather than returned, all of the debit card charges described above, even though Ms. Cressman's account purportedly lacked sufficient funds to cover the transactions.

94.     Plaintiff Hughes incurred similar wrongful overdraft fees on his account.

95.     The overdraft charges assessed to Plaintiffs are representative of millions of dollars of overdraft fees that TD Bank wrongfully assessed and deducted from its customers' accounts. These wrongful takings are especially egregious because the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

### 2. Fees Assessed After The Effective Start Date of EFTA Rules

96. After August 15, 2010, pursuant to Defendant's overdraft service, Defendant imposed fees or charges on Plaintiffs' account for several of Plaintiffs' transactions using their ATM/debit card(s).

97. Plaintiffs did not and have not affirmatively consented, or opted-in, under the EFTA to Defendant's overdraft services for payment of ATM or one-time debit card transactions and the subsequently imposed overdraft charges.

98. Defendant has charged Plaintiffs numerous overdraft fees since August 15, 2010. By way of example, Defendant charged Plaintiff Cressman for at least seven separate overcharges during the period from January 1, 2011 through September 31, 2011, totaling $245.00 in overdraft fees.

### I. The Damages Sustained by Plaintiffs and TD Bank's Other Customers

99. As shown by these examples, TD Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or their account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id*.

100.    According to rules of the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

101.    Thus, as a consequence of TD Bank's overdraft policies and practices, TD Bank has improperly deprived Plaintiffs and the Class of significant funds, causing ascertainable monetary losses and damages.

102.    As a consequence of TD Bank's improper overdraft fees, TD Bank has wrongfully deprived Plaintiffs and the Class of funds to which TD Bank had no legitimate claim.

103.    Plaintiffs had sufficient funds to cover at least some of the transactions for which they were charged overdraft fees.  Plaintiffs and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that TD Bank could impose these wrongful charges.  In many instances, TD Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

## VI.    CLASS ALLEGATIONS

104.    Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to FED. R. CIV. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

A.  **The Proposed Class**

105.  Plaintiffs seeks to represent the following Class of similarly situated persons defined as follows:

> All customers of TD Bank or TD Banknorth or Commerce Bank (collectively, the "Bank") who, within the applicable statute of limitations through to the date of class certification, initiated an electronic funds transfer with an ATM or debit card issued by the Bank and were assessed one or more overdraft fees or charges for an ATM or one-time debit card transaction as a result of the Bank's improper practices alleged herein (the "Class").

106.  Plaintiffs reserve their right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

107.  Excluded from the Class are TD Bank, TD Bank's parents, subsidiaries, affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all Bank customers whose accounts were properly overdrawn at the time they incurred overdraft fees,[2] governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

B.  **Numerosity**

108.  The members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class consists of thousands of members who are located throughout the eastern United States. The Court may ascertain the exact size of the Class and the identities of the individual members thereof through Defendant's records, which are in exclusive control of Defendant.

109.  This case centers on Defendant's practice of charging overdraft fees for payment of ATM or one-time debit card transactions. Because of the relatively small amount of the

---

[2] Accounts are "properly overdrawn" if the negative balance is not a result of the Bank's improper practices, as alleged herein, of re-sequencing debit card transactions from highest to lowest, charging overdraft fees to the account of a customer who did not consent to overdraft protection, or otherwise manipulating customer accounts to maximize overdrafts and overdraft charges.

individual charges, Class members who have been improperly assessed these fees are not likely to be able to prosecute individual lawsuits that would cost much more in attorney fees to bring the suit than the actual claim for recovery.

110.    In the interest judicial economy, the Court should determine Defendant's liability for all Class members in a single action rather than separately pursuing hundreds or thousands of cases for the same cause of action based on the same facts.

C.    **Typicality**

111.    The claims of the representative Plaintiffs are typical of the claims of all members of the Class that they represent in that Plaintiffs and each Class member were consumers of Defendant and were assessed overdraft fees or charges by Defendant stemming from purchases made with ATM or debit cards.

112.    Plaintiffs' claims and the claims of each Class member that they seek to represent are based on the same legal theories and arise from the same unlawful conduct.

113.    Plaintiffs have suffered the same injury as all Class members.  Plaintiffs have the same interests as every other Class member and no interests antagonistic to the interests of any other Class member.

D.    **Common Questions of Law and Fact**

114.    This case presents many questions of law and fact common to Plaintiffs and the Class which predominate over any questions which may affect individual members, including:

a.    Whether TD Bank manipulated and re-sequenced debit card or ATM transactions from highest to lowest to maximize the number of overdrafts incurred by customers and the amount of overdraft fees assessed;

b.      Whether TD Bank imposed overdrafts and overdraft fees when, but for TD Bank's manipulating and reordering transactions, the overdrawn accounts would otherwise have sufficient funds;

c.      Whether TD Bank failed to clearly disclose its overdraft protection programs or refused to allow customers to opt out of overdraft protection services;

d.      Whether TD Bank failed to alert customers that a debit card or ATM transaction would trigger an overdraft fee, and failed to provide customers with an opportunity to cancel such transactions;

e.      Whether TD Bank failed to obtain affirmative consent from customers before processing transactions that would cause those customers' accounts to be overdrawn and result in assessing overdraft fees;

f.      Whether TD Bank failed to provide customers with accurate balance information;

g.      Whether TD Bank charged excessive overdraft fees that outweighed the actual costs and risks of covering insufficient funds transactions;

h.      Whether TD Bank requires its customers to enter into standardized account agreements which include unconscionable provisions;

i.      Whether TD Bank's overdraft practices and policies outlined herein violate state and federal laws;

j.      Whether Plaintiffs and members of the Class are entitled to injunctive relief, actual damages, statutory damages, treble damages, costs, and attorney's fees for Defendant's acts and conduct, and if so, the proper measure of such damages.

115.    Resolution of any of the above questions of law or fact common to the Class will affect all of the Class members.

### E.    Adequacy of Representation

116.    Plaintiffs are members of the Class as defined above and have suffered the same harm alleged on behalf of the Class.

117.    Each Plaintiff maintained an account at TD Bank, was charged one or more overdraft fees for an ATM or one-time debit card transaction as a result of TD Bank's practice of holding debit card transactions and re-sequencing the transactions from highest to lowest, both before and after August 15, 2010, and did not affirmatively consent, or opt-in, to Defendant's overdraft services prior to Defendant assessing a fee or charge.

118.    Plaintiffs have the same interests as the Class members, including recovery of unlawfully collected fees or charges imposed by TD Bank.  Plaintiffs have no interests antagonistic to or in conflict with the members of the Class that they seek to represent.

119.    Plaintiffs have retained competent counsel and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class.  Plaintiffs' counsel is able, competent and qualified to prosecute this class action litigation on behalf of Plaintiffs and the Class.

### F.    Predominance and Superiority

120.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of TD Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.

Therefore, absent a class action, the Class members will continue to suffer losses and TD Bank's misconduct will proceed without remedy.

121.    Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

122.    Common questions of law or fact predominate over individual issues. Predominant issues in this case include whether Defendant re-sequenced transactions to cause Plaintiffs and members of the Class to incur overdraft charges.

123.    Proceeding as a class action in this case is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class.  Relative to the aggregate damages that may be awarded to the Class may be substantial, the members of the Class suffered individually small damages.  Therefore, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for Defendant's wrongdoings.

124.    Furthermore, individualized litigation would present the potential for varying, inconsistent, or contradictory judgments, and would likely cause delay and additional expense to all parties and the court system resulting from multiple trials of the same factual issues.

Proceeding as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and would protect the rights of each member of the Class.

### FIRST CLAIM FOR RELIEF
### Violations Of The New Jersey Consumer Fraud Act

125.    Plaintiffs incorporate and re-allege paragraphs 1 through 124 above.

126.    TD Bank engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 et seq.

127.    TD Bank is a "person" as defined by § 56:8-1(d).

128.    TD Bank's checking, debit and ATM banking services constitute "merchandise" as defined by § 56:8-1(c).

129.    TD Bank's practices relating to the imposition of overdraft fees on consumers are unlawful and constitute an "unconscionable commercial practice, deception, fraud . . . [and] misrepresentation" in connection with their banking services as defined by § 56:8-2.

130.    As redress for TD Bank's repeated and ongoing violations of the New Jersey Consumer Fraud Act, Plaintiffs and the Class are entitled to damages and declaratory relief pursuant to §§ 56:8-2.12 and 56:8-159.

131.    Further, pursuant to § 56:8-19, Plaintiffs are entitled to court costs and reasonable and necessary attorneys' fees in connection with this action.

### SECOND CLAIM FOR RELIEF
### Violation Of The Electronic Fund Transfer Act And Its Regulations,
### 15  .S.C. §1693 And 12 C.F.R §205

132.    Plaintiffs incorporate and re-allege paragraphs 1 through131 above.

133.    Plaintiffs allege this claim on behalf of all Class members who, within the applicable statute of limitations under the EFTA preceding the filing of this action to the date of

class certification,  initiated an electronic funds transfer with an ATM or debit card issued by TD

Bank after (1) July 1, 2010 if the account was opened on or after July 1, 2010 or (2) August 15,

2010 if the account was opened prior to July 1, 2010, and  who did not affirmatively consent, or

opt-in, to TD Bank's overdraft services but were assessed one or more overdraft fees or charges

for an ATM or one-time debit card transaction.

134.    TD Bank failed to obtain affirmative consent, or opt-in from Plaintiffs and the

Class, as required by 15 U.S.C. §§1693b(b), 1693c, and 12 C.F.R §205.17(b) and imposed a fee

in violation of 12 C.F.R. §205.17(b) and (c).

135.    15 U.S.C. §§1693b(b) and 1693c, and its implementing regulation, 12 C.F.R.

§205.17(b), prohibit the imposition and receipt of a fee for overdraft services from conducting an

electronic fund transfer unless affirmative consent, or opt-in, is obtained.

136.    TD Bank imposed and received a fee in violation of 15 U.S.C. §§1693b(b), 1693c

and its implementing regulation 12 C.F.R §205.17(b).

137.    As a result of TD Bank's violations of the EFTA, Defendant is liable to Plaintiffs

and the Class for actual and statutory damages pursuant to 15 U.S.C. §1693m.

138.    As a result of TD Bank's violations of the EFTA, Plaintiffs and the members of

the Class are entitled to recover costs of suit and their reasonable attorney's fees.

### THIRD CLAIM FOR RELIEF
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
Under the Laws of New Jersey**

139.    Plaintiffs incorporate and re-allege paragraphs 1 through 138 above.

140.    Plaintiffs and TD Bank have contracted for bank account deposit, checking,

ATM, and debit card services, as embodied in TD Bank's Account Agreement and related

documentation.

141.    Under the laws of the states where TD Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

142.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

143.    Since at least 2006, TD Bank has breached the covenant of good faith and fair dealing in the Account Agreement through its overdraft policies and practices as alleged herein.

144.    Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

145.    Plaintiffs and members of the Class have sustained damages as a result of TD Bank's breach of the covenant of good faith and fair dealing.

## FOURTH CLAIM FOR RELIEF
### Unconscionability Under the Laws of New Jersey

146.    Plaintiffs incorporate and re-allege paragraphs 1 through145 above.

147.    TD Bank's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft services;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Account Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, that provide the customer only with the "opportunity" to adhere to the one-sided terms or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Account Agreement, but rather in a different and separate document, which is also not signed by the depositor; and

f.      The Account Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though TD Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

148.    Considering the great business acumen and experience of TD Bank in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of

the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

149.    The imposition of overdraft charges which exceed the amount overdrawn (*e.g*., the imposition of a $35.00 charge on an overdraft of less than $35.00) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft or its risk of nonpayment (where the Bank pays the overdraft), or the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

150.    Plaintiffs and members of the Class have sustained damages as a result of TD Bank's unconscionable policies and practices as alleged herein.

## FIFTH CLAIM FOR RELIEF
### Conversion Under the Laws of New Jersey

151.    Plaintiffs incorporate and re-allege paragraphs 1 through 150 above.

152.    TD Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

153.    TD Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

154.    TD Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

155.    TD Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

156. TD Bank intends to permanently deprive Plaintiffs and the members of the Class of these funds.

157. These funds are properly owned by Plaintiffs and the members of the Class, not TD Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Class.

158. Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

159. TD Bank has wrongfully converted these specific and readily identifiable funds.

160. TD Bank's wrongful conduct is continuing.

161. As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages.

162. By reason of the foregoing, Plaintiffs and the members of the Class are entitled to recover from TD Bank all damages and costs permitted by law, including all amounts that TD Bank has wrongfully converted.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment Under the Laws of New Jersey

163. Plaintiffs incorporate and re-allege paragraphs 1 through 162 above.

164. Plaintiffs, on behalf of themselves and the Class, assert a common law claim for unjust enrichment.

165. By means of TD Bank's wrongful conduct alleged herein, TD Bank knowingly provides banking services to Plaintiffs and members of the Class that are unfair, unconscionable, and oppressive.

166.    TD Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, TD Bank acted with conscious disregard for the rights of Plaintiffs and members of the Class.

167.    As a result of TD Bank's wrongful conduct as alleged herein, TD Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

168.    TD Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

169.    Under the common law doctrine of unjust enrichment, it is inequitable for TD Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner.  TD Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

170.    The financial benefits derived by TD Bank rightfully belong to Plaintiffs and members of the Class. TD Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by TD Bank traceable to Plaintiffs and the members of the Class.

171.    Plaintiffs and members of the Class have no adequate remedy at law.

## JURY DEMAND

172.    Plaintiffs hereby demand a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs on behalf of themselves and the members of the Class, pray for:

a.    An Order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel for Plaintiffs as Class Counsel;

b.      An Order declaring TD Bank's overdraft policies and practices to be wrongful, unfair and unconscionable;

c.      An Order enjoining TD Bank's further violations of state and federal laws;

d.      Disgorgement of the ill-gotten gains derived by TD Bank from its misconduct and restitution to Plaintiffs and the Class of all monies paid to TD Bank as a result of its misconduct;

f.      An award to Plaintiffs and the Class of actual damages, and treble damages under the  New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq.*

g.      Pre-judgment interest at the maximum rate permitted by applicable law;

h.      An award to Plaintiffs and the members of the Class of actual and statutory damages pursuant to 15 U.S.C. §1693m;

i.      Payment of costs of suit herein incurred pursuant to 15 U.S.C. §1693m(a)(3), and under N.J.S.A. § 56:8-19;

j.      Payment of reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3) and under N.J.S.A. § 56:8-19; and

k.      For other and further relief as the Court may deem proper.

Dated: December 14, 2011        Respectfully submitted,

s/ Caitlin Duffy

**SQUITIERI & FEARON, LLP**
Caitlin Duffy
2600 Kennedy Boulevard, Suite 1K
Jersey City, New Jersey 07306
Tel:    (201) 200-0900
Fax:    (201) 200-9008
Email: caitlin@sfclasslaw.com

-and-

Stephen J. Fearon, Jr.
Caitlin Duffy
Olga Anna Pettigrew
32 East 57th Street
12th Floor
New York, New York 10022
Tel:    (212) 421-6492
Fax:    (212) 421-6553
Email: stephen@sfclasslaw.com
Email: caitlin@sfclasslaw.com
Email: olga@sfclasslaw.com