UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER HUGHES and CARLA CRESSMAN, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TD BANK, N.A.,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-7257 (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

SQUITTIERI & FEARON LLP
Caitlin Duffy, Stephen J. Fearon, Jr. and Olga Anna Pettigrew
32 East 57th Street
12th Floor
New York, NY 10022
    Counsel for Plaintiffs

BROWN & CONNERY, LLP
Susan M. Leming and William M. Tambussi
360 Haddon Avenue
PO Box 539
Westmont, NJ 08102
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiffs' claims arise from Defendant's allegedly unlawful banking practices. Presently before the Court is Defendant's Motion to Dismiss for failure to state a claim. (Dkt. No. 4)

**I.**

1

Plaintiffs Christopher Hughes and Carla Cressman opened checking accounts with Defendant TD Bank. To make purchases and withdraw funds from the accounts, Defendant issued Plaintiffs a debit card. (Compl. ¶ 37) In connection with the accounts, TD Bank automatically registered customers for its overdraft protection program. (*Id.* at ¶ 78) In other words, TD Bank did not obtain Plaintiffs' affirmative consent or opt-in to the program. (*Id.* at ¶ 82)

The overdraft protection program allowed customers to withdraw funds in excess of their daily account balance - up to a certain internally designated limit - but were charged a fee for each transaction in the red. Due to nearly instantaneous debit transaction authorizations, TD Bank could have denied transactions that would overdraw accounts instead of permitting the transactions and charging a fee. (*Id.* at ¶¶ 99-101)

The specific terms of TD Bank's checking accounts and overdraft protection programs are provided in the Personal Deposit Account Agreement ("PDAA"). (*See* Cert. Leming, Ex. B at 13-14) Relevant here, the 2009 PDAA specifically reserves the right to "establish different processing orders for checks and other items." (*Id.* at 13) "[S]ome processing orders may result in more insufficient funds items [sic] and more fees than others. We may choose our processing orders in our sole discretion and without notice to you, regardless of whether additional fees may

result." (*Id.* at 14)  Once an account has a negative balance, each transaction, no matter how small, accrues a thirty-five dollar fee up to five total fees per day.  (*See* Compl. ¶ 49) Posting the checks from largest to smallest within any given business day, regardless of the order in which they arrived at the bank, exhausts account funds more quickly and is alleged to result in more overdraft fees.  (*Id.* at ¶ 52)  Moreover, the overdraft fee is often disproportionately larger than the size of the offending transaction.  This is especially so considering reordering the day's transactions from high to low has the effect of assigning overdraft fees to the smallest of the day's transactions.

The 2011 PDAA also reserves the right to reorder transactions, but only within certain categories of items. First, "deposits that have become available to you that Business Day are added to your available Account balance."  (Cert. Leming, Ex. A at 12)  Next, pending debit card transactions are deducted from the account.[1]  (*See id.*)  However, TD Bank does not deduct the amount of pending debit card authorizations from the "available Account balance for certain merchants that frequently request authorization for amounts in excess of the likely

---

[1] As explained in the PDAA, "[w]hen you use a debit card, ATM card, or other electronic means to make withdrawals, we may receive notice of the transaction before it is actually presented to us for payment.  That notice may be in the form of a merchant authorization request or other electronic inquiry."  *Id.*

3

transaction amount (hereinafter "Undocumented Merchants")." (*Id.*)  In other words, a purchase may post several days after the date of the transaction despite TD Bank having received a request for an authorization.

> We then post items to your Account by category, in the following order:
> 
> i) Outgoing wire transfers, deposit return chargebacks, and debit adjustments to your Account balance;
> ii) Overdraft fees, other returned item fees, and deposit return fees;
> iii) All other Account fees (except as described in (iv) below), and all other items including checks, ATM transactions, and debit card transactions; and
> iv) Fees assessed at the end of the statement cycle including, for example but not limited to, monthly maintenance fees and non-TD Bank ATM fees.
> 
> Within categories i, ii, and iii, we post items in order from largest to smallest.

(*Id.*)  TD Bank does "not process transactions in the order in which they occur.  The order in which items are processed may affect the total amount of overdraft fees incurred."  (*Id.*)

In one bizarre example, Plaintiffs allege that TD Bank charged Cressman two overdraft fees on May 13, 2011 yet the account displayed a positive balance.  Plaintiffs assert that "TD Bank deducted pending transactions on subsequent days without reflecting those transactions on Ms. Cressman's statement." (Compl. ¶¶ 86-88)  Neither the parties nor the PDAA adequately explains how overdraft fees could accrue with a positive balance.

4

On December 14, 2011, Plaintiffs filed the Complaint. On February 27, 2012, Defendant filed the present Motion to partially dismiss for failure to state a claim. This case is currently subject to a Conditional Transfer Order ("CTO") entered by the MDL Panel on March 16, 2012.[2]  Defendant timely opposed the CTO. "If any party files a notice of opposition with the Clerk of the Panel within this 7-day period, the stay will be continued until further order of the Panel." Conditional Transfer Order, *In re Checking Account Overdraft Litigation*, MDL No. 2036, Dkt. No. 654, (Mar. 16, 2012). At this juncture, therefore, this Court retains jurisdiction to decide this Motion.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable

---

[2] By March 16, 2012, the Multi-District Litigation Panel had transferred approximately 80 cases that alleged facts substantially similar to the present matter to the Southern District of Florida.

5

to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The parties do not dispute that the Court may examine the PDAAs attached to Defendant's motion papers.

**III.**

6

Of Plaintiffs' six claims, Defendant moves to dismiss the following five: (1) unconscionable commercial practices under the New Jersey Consumer Fraud Act ("CFA"); (2) common law unconscionability; (3) breach of contract and the covenant of good faith and fair dealing; (4) conversion; and (5) unjust enrichment.[3]

There are two lines of non-binding persuasive precedent with facts remarkably similar to the case at bar.  The two lines arrived at opposite conclusions.  One line comes from an unpublished Third Circuit decision affirming the district court's decision to grant a motion to dismiss for failure to state a claim.  *See Hassler v. Sovereign Bank*, 644 F.Supp.2d 509, 514 (D.N.J. 2009), *aff'd*, 374 Fed.Appx. 341 (3d Cir. 2010); *see also Grau v. New Kensington Arnold School Dist.*, 429 Fed.Appx. 169, 171 n.3 (3d Cir. 2011) (noting that unpublished "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing. Third Circuit Internal Operating Procedure 5.7.").  The other comes from the multi-district litigation proceeding, which denied defendants' motion to dismiss.  *See In re Checking Account Overdraft Litigation*, 694 F.Supp.2d 1302 (S.D.Fla. 2010) (hereinafter "*MDL*").

---

[3] The one claim Defendant does not move to dismiss is an alleged violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693.

A.

Defendant argues that *Hassler* controls the outcome of this case. *See Hassler*, 374 Fed.Appx. at 343. In *Hassler*, Plaintiff alleged that Defendant Sovereign Bank's practice of reordering charges to maximize overdraft fees were misleading and unfair. *Hassler*, 374 Fed.Appx. at 344. Hassler claimed Defendant: (1) violated the CFA, (2) breached the covenant of good faith and fair dealing, and (3) was unjustly enriched. *See Hassler*, 644 F.Supp.2d at 513, *aff'd*, 374 Fed.Appx. 341.

First, "[u]nder the CFA, to constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Hassler*, 644 F.Supp.2d at 514, *aff'd*, 374 Fed.Appx. 341 (quoting *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J.Super. 8, 13 (App.Div. 2003)). The *Hassler* Court found that the terms of the PDAA disclosure were not misleading or unfair. *See Hassler*, 374 Fed.Appx. at 344.

Second, "[a] good faith performance doctrine may be said to permit the exercise of discretion for any purpose - including ordinary business purposes - reasonably within the contemplation of the parties." *Id.* at 345 (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 246 (2001)). The *Hassler* Court held that a mere economic disadvantage, through a process clearly accounted for in the PDAA, could not form the basis of a breach of the

8

covenant of good faith and fair dealing. *Hassler*, 374 Fed.Appx. at 345.

Finally, unjust enrichment requires a plaintiff to establish that a defendant received a benefit and retention of the benefit would be inequitable. *Id.* "Satisfying the second prong of the test requires Hassler to demonstrate that Sovereign was 'enriched . . . beyond its contractual rights.'" *Id.* (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). However, in *Hassler*, the Court held that Sovereign Bank merely exercised its contractual rights. 374 Fed.Appx. at 345. After dismissing the claims on state law grounds, the *Hassler* Court declined to reach defendant's federal preemption argument.

### B.

Plaintiff favors the *MDL* decision. There, the Court denied defendants' motion to dismiss in all respects analogous to the present case. There, plaintiffs claimed defendants: (1) violated state consumer protection laws, (2) enforced unconscionable contract terms, (3) breached the covenant of good faith and fair dealing, (4) was unjustly enriched, and (5) converted plaintiffs' account funds.

First, and relevant to this case, plaintiffs alleged defendants engaged in unconscionable business practices by reordering debit transactions from high to low, issuing overdraft

9

fees far in excess of any reasonable commercial risk, and failing to notify plaintiffs of their right to opt out of the overdraft protection program. *See MDL*, 694 F.Supp.2d at 1326. Taking those allegations as true, the Court denied the motion to dismiss because plaintiffs adequately alleged unconscionable business practices.

Second, "[a]s a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action, so long as there is an actual controversy between the parties." *Id.* at 1318 (quoting *Eva Midwest Nat'l Mortg. Banc, Inc.*, 143 F.Supp.2d 862, 895 (N.D.Ohio 2001). The *MDL* Court held, however, that the case raised the unusual circumstance where the banks had direct access to customer funds, thereby avoiding the need to ever sue for unpaid overdraft fees. *See MDL*, 694 F.Supp.2d at 1318-19. If there could be no suit, then bank customers would never have the opportunity to raise the affirmative defense without seeking declaratory relief.

Moreover, the *MDL* Court found that plaintiffs adequately alleged both procedural and substantive unconscionability. "[T]he disparity in sophistication and bargaining power between" the parties constituted procedural unconscionability. *Id.* at 1319. Moreover, defendants did not notify customers that they had the right to opt out of the overdraft protection program. *See id.* On the other hand, plaintiffs established substantive

10

unconscionability with allegations that defendants reordered debit transactions for the sole purpose of gouging customers. Furthermore, the fees "bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service." *Id.* at 1320. Therefore, plaintiffs were not precluded from asserting a claim for declaratory relief on a theory of unconscionability.

Third, "[a]s a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Id.* at 1314 (quoting 23 Williston on Contracts § 63:22 (4th ed.). The *MDL* Court held that plaintiffs did not want to change the terms of the contract, but instead wanted defendants to reasonably exercise their contractual discretion. *Id.* at 1315 (citing *Amoco Prod. Co. V. Heimann*, 904 F.2d 1405, 1411-12 (10th Cir. 1990) (where discretion exists in one of two parties to a contract, that discretion must be exercised in good faith). As a result, the *MDL* Court denied the motion to dismiss on the claim for a breach of the covenant of good faith and fair dealing.

Fourth, "Plaintiffs have alleged sufficient facts - that, among other things, Defendants manipulated the posting order of debit transaction in bad faith so as to maximize the number of

overdraft fees incurred - which could lead a reasonable fact-finder to conclude that it would be unjust to retain the benefit of those fees." *Id.* at 1322. Therefore, the *MDL* Court denied the motion on the unjust enrichment claim.[4]

Finally, defendants argued that the tort of conversion cannot lie where plaintiffs do not have ownership due to the debtor/creditor nature of the parties' relationship. However, the *MDL* Court held that plaintiffs only needed to show the right to possess the funds in their bank account, which they unquestionably alleged. *Id.* at 1323 (citing *White v. Wachovia Bank, N.A.*, 563 F.Supp.2d 1358, 1371 (N.D.Ga. 2008) (a plaintiff must show "title to the property or the right of possession.")). In all analogous respects to the case at bar, the *MDL* Court denied defendants' motions to dismiss.

Defendants also argued that national banking federal regulation preempted state law thereby barring all of plaintiffs' state law claims. "[T]o determine preemption the Court must look at whether the federal and state statutes are in irreconcilable conflict." *Id.* at 1311 (citing *Barnett Bank of Marion, N.A. v. Nelson*, 517 U.S. 25, 30 (1996) (emphasis omitted). The *MDL* Court held that federal regulation did not irreconcilably conflict with

---

[4] The Court also dispensed with defendants' argument that unjust enrichment cannot lie where such enrichment is permissible by the express terms of a contract. *Id.* at 1321. Fed.R.Civ.P. 8(d) expressly provides for alternative theories of liability, even if such theories are inconsistent.

common law contract and tort principles. *Id.* at 1313. Specifically, nothing in federal regulation suggests that banks may issue overdraft fees in bad faith. *Id.*

### C.

This Court agrees with the *MDL* Court's opinion and adopts its reasoning in full. At this stage in the litigation, Plaintiffs have plausibly pled facts that, if developed through discovery, state a claim for relief. To the extent the *MDL* Court relied on law not applicable in this jurisdiction, the Court supplements its analysis below.

### 1.

To state a claim under the CFA, Plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the two." *Hassler*, 374 Fed.Appx. at 343 (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 (2009). Unlawful conduct can include any unconscionable commercial practice, which is defined as "the standard of conduct contemplating good faith, honesty in fact and observance of fair dealing." N.J.S.A. 56:8-2. The practice must be misleading and outside the norm of a reasonable business practice. *See Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 430 (1995). This standard is "amorphous"

13

and the New Jersey Supreme Court expected courts to "pour content into the concept on a case-by-case basis." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473 (1988).

Defendant argues that the decision in *Hassler* requires dismissal in this case because Plaintiffs have not alleged Defendant engaged in unlawful conduct. The Court disagrees.

Plaintiffs allege that TD Bank rearranged debit transactions, and obscured account balance information, in order to maximize overdraft fees. Although TD Bank attempts to justify this behavior through the discretion afforded by the PDAA - a contract of adhesion - the practice is allegedly "outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf*, 139 N.J. at 430. Moreover, TD Bank did not notify Plaintiffs of their right to opt out of the overdraft protection program. *See Boyes v. Greenwich Boat Works, Inc.*, 27 F.SUpp.2d 543, 547 (D.N.J. 1998) ("Courts have declared that the Consumer Fraud Act should be construed liberally in favor of protecting customers."). Accordingly, Defendant's Motion will be denied on the CFA claim.

### 2.

Defendant argues that the affirmative defense of unconscionability normally "acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for

14

affirmative relief." *See Hunter v. Sterling Bank, Inc.*, 2011 WL 5921388, *8 (D.N.J. 2011) (quoting *Stogum Holdings, Inc. v. Ropes*, 352 N.J.Super. 555, 566 n.14 (Ch.Div. 2002). However, affirmative defenses may also be raised through declaratory relief. *See MDL*, 694 F.Supp.2d at 1318 (collecting cases where declaratory relief under the theory of unconscionability was permitted as a procedural matter).

Here, Plaintiff seeks a declaratory judgment that certain contractual terms are unconscionable. Should Plaintiff be successful, "a declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert." *Id.* Accordingly, the Motion will be denied on this basis.

Defendant also argues that Plaintiffs have failed to adequately allege a claim for unconscionability. "Plaintiff must demonstrate unconscionability by showing some overreaching imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." *Howard v. Diolosa*, 241 N.J.Super. 222, 230 (App.Div. 1990). Plaintiffs allege that Defendant used its superior bargaining position and sophistication to develop a counterintuitive system of gouging those customers least able to

15

afford overdraft fees - those with low bank account balances.  At this juncture, Plaintiffs have alleged sufficient facts to overcome Defendant's Motion.

### 3.

Defendant argues that the claim for a breach of the implied covenant of good faith and fair dealing must fail because the covenant cannot vary an express contract term and Plaintiffs have not alleged bad faith.  "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."  *Hunter*, 2011 WL 5921388, *6 (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "Various courts have stated that a party must exercise discretion reasonably and with proper motive when that party is vested with the exercise of discretion under a contract."  *Id.* at 247.  A Party's "performance under the contract is tempered by the implied covenant of good faith and fair dealing and the reasonable expectations of the parties."  *Id.* at 250

Here, Plaintiffs do not want to vary express terms of the contract, but want TD Bank to exercise its contractual discretion reasonably. Plaintiffs allege that Defendant had the discretion to both reorder debit transactions and deny transactions that

would overdraft the account.  Defendant allegedly exercised its discretion solely to maximize fees, even when Plaintiffs were led to believe they had a positive account balance.  Moreover, the overdraft fees were disproportionately larger than the size of the overdraft.  These allegations violate Plaintiffs' reasonable expectations under the contract and plausibly state a claim.  Accordingly, the Motion will be denied with respect to the breach of the implied covenant of good faith and fair dealing.

**4.**

Defendant argues that Plaintiffs' unjust enrichment claim must fail because Defendant was not enriched beyond its contractual rights.  "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."  *VRG*, 135 N.J. at 554.  As discussed previously, Plaintiffs have alleged that Defendant exercised its discretion to reorder debit transaction in bad faith.  *See MDL*, 694 F.Supp.2d at 1321-22.  Therefore, the Motion will be denied on the unjust enrichment claim.

**5.**

Defendant makes three arguments to dismiss Plaintiff's conversion claim: (1) Defendant did not wrongfully assess

17

overdraft fees, (2) Defendant did not convert any property owned by Plaintiffs when assessing fees, and (3) the economic loss doctrine bars the claim.

First, the Court has discussed Plaintiffs' allegations of Defendant's wrongful conduct at length. Therefore, the Court will not grant Defendant's Motion on this basis.

Second, Defendant argues that the parties were in a relationship of debtor/creditor; therefore, Plaintiffs could not own the property, and the claim for conversion fails as a matter of law. However, Plaintiffs need only have a right to immediate possession to establish a claim for conversion. *See Hunter v. Sterling Bank*, 588 F.Supp.2d 645, 650 (E.D.Pa. 2008) (analyzing New Jersey law). Here, "Plaintiffs unquestionably had the right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendant[] wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds." *MDL*, 694 F.Supp.2d at 1323. The same is true in this case.

With respect to Defendant's final argument, "the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract." *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282, 308 (D.N.J. 2009). "To be barred by the economic loss doctrine, the claims must be duplicative of those provided for under the U.C.C." *Id.*

18

(citing *Alloway v. General Marine Indus., L.P.*, 149 N.J. 620, 641 (1997).

Here, Defendant does not identify a duplicative U.C.C. claim. Moreover, Plaintiffs allege that Defendant misappropriated funds in ways not contemplated by the contract. Accordingly, the Motion will be denied.

**IV.**

For the reasons set forth above, the Defendant's Motion to Dismiss will be denied.

Dated: 4/19/12                          /s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J.**